IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO.: 1:09-CV-472

| | |
|---|---|
| ROUSH FENWAY SERVICES, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>LM INSURANCE CORPORATION, LIBERTY MUTUAL INSURANCE COMPANY and CAMBRIDGE UNDERWRITERS, LTD,<br><br>    Defendants. | PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS OF DEFENDANTS LM INSURANCE CORPORATION AND LIBERTY MUTUAL INSURANCE COMPANY |

## NATURE OF THE MATTER

This is a straightforward action arising from Defendants' contract breaches and deceptive trade practices against Plaintiff Roush Fenway Services, LLC ("Roush"). The Liberty Mutual Defendants, in particular, engaged in a pattern of misrepresentations which deceived Roush and caused it to take certain corporate actions. Liberty Mutual later exploited those actions as the purported basis to demand more than quadrupled insurance premiums from Roush, even though Liberty Mutual insured no new risk and had assured Roush there would be no premium increase.

Liberty Mutual seeks dismissal under Federal Civil Rules 12(b)(1) and 12(b)(6), arguing that it is shielded from liability by the exhaustion of administrative remedies doctrine (the "exhaustion doctrine") and the filed rate doctrine, and that Roush has suffered no injury. Liberty Mutual is wrong on all counts.

# FACTS

Liberty Mutual has provided workers' compensation insurance for Roush and its affiliates (referred to collectively as "Roush") since 2002 under a series of workers' compensation policies (the "Policies"). (First Amended Complaint at ¶ 6.) Liberty Mutual has issued to Roush audit reports and resulting invoices, demanding that Roush pay more than quadrupled premiums under the Policies for the periods December 1, 2007 to December 31, 2007 and December 31, 2007 to December 31, 2008. (First Amended Complaint at ¶ 8.) Roush disputes its obligation to pay the additional premiums because they result directly from Liberty Mutual's wrongful conduct as alleged in the First Amended Complaint and summarized below.

In early 2007, Roush was considering a restructuring of its corporate entities, including a change in the entity that employed certain personnel covered by the Policies (the "Personnel") from a corporation to a limited liability company ("LLC"). (First Amended Complaint at ¶ 9.) Before this time, Liberty Mutual had capped the payroll of the Personnel, as executive officers of the corporation, which limited the amount of insurance premiums Roush was required to pay under the Policies. (First Amended Complaint at ¶ 9.)

Because Liberty Mutual's capping of the Personnel payroll significantly impacted premiums under the Policies, Roush sought and received Liberty Mutual's assurance in advance of the LLC conversion that it would not affect this capping or increase premiums. (First Amended Complaint at ¶¶ 10, 11.) Liberty Mutual affirmatively represented to Roush that the payroll of the Personnel would continue to be capped and

premiums would not increase if the Personnel were to become executive officers of an LLC, rather than executive officers of a corporation. (First Amended Complaint at ¶ 11.)

In reliance on Liberty Mutual's assurance and representation, Roush proceeded with the restructuring to an LLC. (First Amended Complaint at ¶ 12.) On August 24, 2007, Liberty Mutual representative Faith Gokey confirmed in an email to Roush that the Personnel payroll continued to be subject to maximum levels or capping. (First Amended Complaint at ¶ 13.) Liberty Mutual again confirmed this treatment in its final audit for 2007 and its renewal quote and Policy for 2008, and the Personnel continued to be employees and executive officers of the LLC through December 31, 2008. (First Amended Complaint at ¶ 14.)

Roush would not have changed the entity employing the Personnel from a corporation to an LLC if Liberty Mutual had not made the aforementioned representations and assurances. (First Amended Complaint at ¶ 15.)

Despite its representations and assurances that premiums for the Personnel would not increase on account of the LLC conversion, Liberty Mutual now seeks to collect substantial additional premiums from Roush by taking the opposite position; that the payroll of the Personnel, as executive officers of an LLC rather than a corporation, is not subject to maximum levels for the purpose of premiums. (First Amended Complaint at ¶ 16.) This position is directly contrary to Liberty Mutual's prior representations and assurances on which Roush relied in implementing the LLC conversion.

## QUESTIONS PRESENTED

1. Whether the exhaustion doctrine and/or filed rate doctrine shield Liberty Mutual from liability for its wrongful conduct, particularly its violations of the UDTPA?

2. Whether Roush has suffered an injury?

## ARGUMENT

**A. The Standards of Dismissal.**

In considering possible dismissal under Rule 12(b)(6), this Court "'obliged to assume all facts pleaded by [Roush] to be true.'" *Wolfe v. Johnson*, 565 F.3d 140, 169, (4th Cir. 2009), quoting, *Walker v. True*, 399 F.3d 315, 319 (4th Cir. 2005), quoting, *Rouse v. Lee*, 339 F.3d 238, 247 n. 8 (4th Cir. 2003). Roush's Complaint need merely allege enough facts "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Accord, *Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009); *Stalvey v. North Carolina Dept. of Vocational Rehabilitation*, 2009 WL 3068415 at *1 (M.D.N.C. 2009).

In considering possible dismissal under Rule 12(b)(1), Liberty Mutual may prevail "only if the material jurisdictional facts are not in dispute and [Liberty Mutual] is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991). Accord, *Jackson v. Leake*, 2006 WL 2264027 at *4 (M.D.N.C. 2006).

**B. The Exhaustion Doctrine and Filed Rate Doctrine Pose No Obstacle to this Action.**

    **1. Liberty Mutual Mischaracterizes Roush's Claims.**

Liberty Mutual's entire argument rests on its fundamental mischaracterization of Roush's claims. Rather than confronting the actual substance of the claims, Liberty Mutual transmutes the Complaint as a "collateral attack on rating guidelines and job classifications filed by the North Carolina Rate Bureau and adopted by the North Carolina Commissioner of Insurance." (Liberty Mutual Brief in Support at p. 7.) Roush's Complaint does not even mention the Rate Bureau or Commissioner of Insurance.

Unable to point to allegations which support its mischaracterization, Liberty Mutual employs distorting catchphrases such as "gravamen," "veiled attack" and "[w]hen condensed down to their essence." (Liberty Mutual Brief in Support at pp. 2, 4, 6, 7, and 8.) Liberty Mutual is in no position to rewrite the Complaint to suit its goals. The fact of the matter is that Roush does not attack the Rate Bureau's rating guidelines or job classifications. The Complaint consists of specific allegations of Liberty Mutual's false assurances and representations that the LLC conversion would not increase Roush's insurance premiums. (First Amended Complaint at ¶¶ 9-16.) Roush alleges that it sought and obtained Liberty Mutual's advice on this issue, was assured by Liberty Mutual that the LLC conversion would not increase premiums, and that Roush detrimentally relied on Liberty Mutual's assurances in implementing the LLC conversion. (First Amended Complaint at ¶¶ 9-16.) As it turns out, Liberty Mutual's assurances were false and deceitful, resulting directly in Liberty Mutual demanding more than quadrupled premiums. These allegations are in no manner an attack on the Rate Bureau's rating

guidelines or job classifications. Roush's only attack is on Defendants' wrongful conduct.

## 2. **The Filed Rate Doctrine Is Inapplicable**.

"The filed rate doctrine precludes a plaintiff from requesting a recalculation of the rates the Commissioner would have set absent the alleged illegal conduct of a defendant." *Lupton v. Blue Cross and Blue Shield of North Carolina*, 139 N.C. App. 421, 424-25, 533 S.E.2d 270, 272 (2000). See also *North Carolina Steel, Inc. v. National Council on Compensation Insurance*, 347 N.C. 627, 632, 496 S.E.2d 369, 372 (1998) ("The filed rate doctrine provides that a plaintiff may not claim damages on the ground that a rate approved by a regulator as reasonable is nonetheless excessive because it is the product of unlawful conduct.")

Roush does not allege that Liberty Mutual engaged in any illegal conduct that impacted the setting of rates by the Insurance Commissioner or Rate Bureau, does not seek to recalculate rates set by the Rate Bureau or the Insurance Commissioner, and does not challenge *any* regulatory action or inaction. Roush's sole focus is on Defendants' wrongful conduct against Roush.

Liberty Mutual relies heavily on *N.C. Steel, Inc. v. National Council on Compensation Insurance*, 347 N.C. 627, 496 S.E.2d 369 (1998), where claims were dismissed on the basis of the filed rate doctrine. Liberty Mutual proclaims that "Roush's purported [UDTPA] claim is materially no different that that asserted by Plaintiffs in *N.C. Steel, Inc.*" (Liberty Mutual Brief in Support at p. 8.) Actually, Roush's UDTPA claim is nothing like the claim in *N.C. Steel*. The plaintiffs in *N.C. Steel* complained that

1153739v1 19630.00034                         6

Case 1:09-cv-00472-TDS -WWD   Document 25   Filed 05/07/10   Page 6 of 14

the 11 insurance company defendants "withheld certain evidence from the Insurance Commissioner in a rate case", resulting in the Commissioner's approval of excessive workers' compensation insurance rates. 347 N.C. at 630, 496 S.E.2d at 371. The plaintiffs in *N.C. Steel* also sued the North Carolina Rate Bureau, the administrative agency responsible for filing proposed rates with the Insurance Commissioner, and the National Council on Compensation Insurance, the entity that performs much of the Rate Bureau's rate-setting function. 347 N.C. App. at 631, 496 S.E.2d at 371. Plainly, *N.C. Steel* pertained to rate-making activities, naming as defendants all the key participants therein. In ruling that the filed rate doctrine applied to bar the suit, the Supreme Court distinguished a different category of cases where plaintiffs allege insurer wrongdoing "not involved with rate-making", denoting that such cases are not precluded by the filed rate doctrine. 347 N.C. App. at 632-33, 496 S.E.2d at 372. This is just such a case. Roush makes no claim against Liberty Mutual involving any rate-making activity; Roush's claims are based entirely on Liberty Mutual's wrongful conduct against Roush, independent of anything Liberty Mutual may have done in relation to rate-making. Thus, *N.C. Steel* actually supports Roush's right to maintain this action.[1]

---

[1] Liberty Mutual also relies on *Lupton v. Blue Cross and Blue Shield of North Carolina*, 139 N.C. App. 421, 533 S.E.2d 270 (2000) (Liberty Mutual Brief in Support at p. 9.) Like *N.C. Steel*, however, *Lupton* involved a premium rate resulting from the insurer's alleged misconduct directed at the Insurance Commissioner. 139 N.C. App. at 423, 533 S.E.2d at 272 (alleged "misrepresent[ation] to the Commissioner that its reserves were within statutory limits"). Again, Roush makes no allegation that Liberty Mutual engaged in misconduct directed at any regulatory authority.

1153739v1 19630.00034                                7

Case 1:09-cv-00472-TDS -WWD   Document 25   Filed 05/07/10   Page 7 of 14

### 3. The Exhaustion Doctrine Is Inapplicable.

The exhaustion doctrine applies only where a plaintiff asks a court for relief that is available administratively in the first instance. *Presnell v. Pell*, 298 N.C. 715, 721, 260 S.E.2d 611, 615 (1979). The purpose of the exhaustion doctrine, therefore, is to ensure that a party aggrieved by "a particular administrative action" pursues administrative remedies before invoking a court's jurisdiction to address the administrative action. *Leeuwenburg v. Waterway Inv. Ltd. Partnership*, 115 N.C. App. 541, 545, 445 S.E.2d 614, 617 (1994), citing, *Presnell*, 298 N.C. at 721-22, 260 S.E.2d 611, 615. The doctrine is codified in the North Carolina Administrative Procedures Act, which obliges a party aggrieved by a "final agency decision" to exhaust administrative remedies before seeking judicial relief from the agency decision. *Steward v. Green*, 189 N.C. App. 131, 136, 657 .E.2d 719, 722 (2008), citing, N.C. Gen. Stat. § 150B-43. Accord, *In re North Carolina Pesticide Bd. File Nos. IR-94-128, IR-94-151, IR-94-155,* 349 N.C. 656, 669, 509 S.E.2d 165, 174 (1998).

The foregoing authorities reveal the exhaustion doctrine's limitations. The doctrine simply "does not apply where the judicial remedy sought is not available under the administrative process." *Hemric v. Groce*, 154 N.C. App. 393, 399-400, 572 S.E.2d 254, 258 (2002), citing, *Guthrie v. Conroy*, 152 N.C. App. 15, 20, 567 S.E.2d 403, 407-08 (2002); *Brooks v. Southern Nat'l Corp.*, 131 N.C. App. 80, 86, 505 S.E.2d 306, 310 (1998), disc. review denied, 350 N.C. 592, 536 S.E.2d 626 (1999) (plaintiff not required to exhaust administrative remedies where alleged common law torts are not subject to administrative review).

Roush does not challenge an administrative agency action, and the relief it seeks herein is unavailable administratively. Roush's claims focus entirely on Defendants' wrongful conduct, and the Rate Bureau is powerless to adjudicate Defendants' wrongful conduct and Roush's resulting damage. The exhaustion doctrine is inapplicable.

C. **Policies Underlying the UDTPA Defeat Liberty Mutual's Position.**

It is settled law that the UDTPA applies to the insurance industry, imposing liability against an insurer responsible for conduct that has the "capacity or tendency to deceive." *ABT Building Products Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 472 F.3d 99, 123 (4th Cir. 2006). See also *Petty v. Carolina Biological Supply*, 2006 WL 2571047 at *6 (M.D.N.C. 2006).[2] Roush alleges that it requested Liberty Mutual's advice and guidance in relation to whether Roush's contemplated transition from a corporation to an LLC would result in any increase in Roush's premiums. (First Amended Complaint at ¶ 10.) Roush also alleges that Liberty Mutual falsely represented and assured Roush that the corporate restructuring would not result in a premium increase. (First Amended Complaint at ¶¶ 10, 11.) Liberty Mutual argues that its wrongful conduct is somehow shielded from liability by the filed rate doctrine. (Liberty Mutual Brief in Support at p. 8.)

As discussed above, the filed rate doctrine is not applicable to begin with. Further, North Carolina law rejects the notion that such a doctrine may be used to shield parties from liability for UDTPA violations. Indeed, accepting Liberty Mutual's position would

---

[2] Liberty Mutual may argue that its deception was unintentional, but intent to deceive is unnecessary to prove a UDTPA claim. *CBP Resources, Inc. v. SGS Control Services, Inc.*, 394 F.Supp.2d 733, 740 (M.D.N.C. 2005), citing, *Blackwell v. Dorosko*, 95 N.C. App. 637, 638-39, 383 S.E.2d 670, 671 (1989).

immunize insurers from UDTPA liability in many circumstances, virtually inviting deceptive practices such as those Liberty Mutual committed against Roush.

Defendants often try to invoke various doctrines to shield themselves from UDTPA liability.  Such efforts generally fail on account of the overriding legislative objective "'to declare deceptive acts or practices in the conduct of any trade or commerce in North Carolina unlawful, to provide civil means to maintain ethical standards of dealings between persons engaged in business and the consuming public within the State, and to enable a person injured by deceptive acts or practices to recover treble damages from a wrongdoer.'"  *Hardy v. Toler*, 24 N.C. App. 625, 630-31, 211 S.E.2d 809, 813 (1975), modified on other grounds, 288 N.C. 303, 218 S.E.2d 342 (1975).  Accord, *State ex rel. Easley v. Rich Food Services, Inc.*, 139 N.C. App. 691, 697, 535 S.E.2d 84, 88 (2000).  This objective is reached through the UDTPA's broad application:  "Except for certain limited exemptions set forth in the statute, commerce includes 'all business activities, however denominated.'"  *Gosai v. Abeers Realty and Development Marketing, Inc.*, 166 N.C. App. 625, 631, 605 S.E.2d 5, 10 (2004), quoting, N.C. Gen. Stat. § 75-1.1(b).  No such exceptions apply here.

### D. **<u>Roush Has Suffered an Injury</u>**.

Liberty Mutual's final argument is that the UDTPA claim is flawed because the Roush does not identify any damage caused by Liberty Mutual's deceptive conduct.[3]  This argument is also without merit.

---

[3] The "no damage" argument is at odds with the statement in Liberty Mutual's Notice of Removal that the "relief and/or damages sought by Roush through its Complaint exceeds $2,000,000."

Roush agrees that injury is a necessary element of an actionable UDTPA claim. Indeed, "injury in fact" is one of the three constitutional elements of standing (the other two being traceability and redressability), and applies to UDTPA claims. *Yacovelli v. Moeser*, 2004 WL 1144183 at *3 (M.D.N.C. 2004), citing, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Carcano v. JBSS, LLC*, 684 S.E.2d 41, 52 (N.C. App. 2009). This requirement is met by any invasion of "a legally protected interest" which is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations omitted). In situations where there is no current actual injury, imminence allows standing as long as the injury "is not too speculative." *Lujan*, 505 U.S. at 564 n. 2.

Liberty Mutual's deception induced Roush to take a certain course of action that resulted directly in Liberty Mutual demanding more than quadrupled premiums, notwithstanding Liberty Mutual's prior assurances that there would be no premium increase. (First Amended Complaint at ¶¶ 9-16.) Liberty Mutual argues that the overcharges demanded of Roush have caused no injury, because Roush has not actually paid Liberty Mutual. Liberty Mutual offers no authority for the notion that injury is lacking unless and until Roush succumbs to Liberty Mutual's unlawful demand. The undisputed fact remains that Roush currently faces hundreds of thousands of dollars in overcharges demanded by Liberty Mutual, which Liberty Mutual to this day maintains are due and owing.

It is beyond reasonable dispute that Roush has a "legally protected interest" to be free from such demand which resulted from Liberty Mutual's deception. Moreover, there

is nothing "conjectural", "hypothetical" or "speculative" about the overcharges and Liberty Mutual's insistence that Roush owes the money now. Although quantifying Roush's injury may not be simple, the injury is very real and the amount of ultimate recovery is for the jury. See, e.g., *Jordan v. Shaw Industries, Inc.*, 1996 WL 1061687 at * 9 (M.D.N.C. 1996).

## CONCLUSION

Based on the foregoing, Roush respectfully requests that the Court deny Liberty Mutual's Motion to Dismiss.

This 7th day of May, 2010.

/s/ R. Steven DeGeorge
R. Steven DeGeorge
N.C. Bar No. 20723

ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246-1900
(704) 377-2536
sdegeorge@rbh.com

Attorneys for Plaintiff
Roush Fenway Services, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 7th day of May, 2010 he electronically filed the foregoing with the Clerk of Court using the CM/ECF system and electronically served the document upon the following:

> J. Mark Langdon, Esq.
> Jessica E. Bowers, Esq.
> Elmore & Wall, P.A.
> Post Office Box 10937
> Raleigh, North Carolina 27605
>
> Andrew W. Lax, Esq.
> McNair Law Firm
> 301 South Tryon Street
> Suite 1615
> Charlotte, North Carolina 28282

/s/ R. Steven DeGeorge
R. Steven DeGeorge
