# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ROUSH FENWAY SERVICES, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LM INSURANCE CORPORATION, ) <br> LIBERTY MUTUAL INSURANCE ) <br> COMPANY, and CAMBRIDGE ) <br> UNDERWRITERS, LTD., ) <br> ) <br> Defendants. ) | **MEMORANDUM OPINION AND RECOMMENDATION** <br><br> 1:09CV472 |

This matter is before the court on a motion to dismiss by Defendants LM Insurance Corporation and Liberty Mutual Insurance Company (docket no. 24). Plaintiff has responded in opposition to the motion; and, in this posture, the motion is ripe for disposition. Furthermore, because the parties have not consented to the jurisdiction of the magistrate judge, the motion must be dealt with by recommendation. For the following reasons, it will be recommended that the court deny the motion to dismiss.

## I. Background and Alleged Facts Leading to Plaintiff's Lawsuit

Plaintiff Roush Fenway Services, LLC is a Delaware limited liability company with its principal place of business in Cabarrus County, North Carolina. Defendant Cambridge Underwriters, Ltd. ("Cambridge") is a Michigan corporation that regularly transacts business in North Carolina. Defendant LM Insurance Corporation is an Iowa corporation, and Defendant Liberty Mutual Insurance Company is a

Massachusetts corporation that regularly transacts business in Cabarrus County, North Carolina. Defendants LM Insurance Corporation and Liberty Mutual Insurance Company will be collectively referred to as "Liberty Mutual" or Defendants. Liberty Mutual has provided workers' compensation insurance to Plaintiff and its affiliates since 2002 under a series of workers' compensation policies. At all relevant times, Cambridge has served as Plaintiff's insurance broker and risk-management advisor.

According to the First Amended Complaint, in early 2007 Plaintiff began to consider restructuring its corporate entities, including changing one entity that employed certain Personnel from a corporation ("Roush Corporation") to a limited liability company ("Roush LLC").[1] (First Am. Compl. ¶ 9.) Before this time, Liberty Mutual had capped the payroll of the Personnel, as executive officers of Roush Corporation, at levels set by North Carolina, the state in which the Personnel were employed. (*Id.*) Plaintiff alleges that because Liberty Mutual's capping of the Personnel payroll significantly affected premiums under the Policies, Plaintiff informed Cambridge of its planned restructuring to obtain Cambridge's advice and

---

[1] Plaintiff originally filed the action in state court on May 28, 2009, naming only LM Insurance Corporation and Liberty Mutual as Defendants. On June 29, 2009, Defendants removed the action to this court based on diversity jurisdiction. *See* 28 U.S.C. § 1332. On August 21, 2009, LM Insurance Corporation and Liberty Mutual filed a motion to dismiss Plaintiff's original complaint. (*See* docket no. 8.) Subsequently, on April 6, 2010, Plaintiff filed a First Amended Complaint, naming Cambridge as an additional Defendant, and asserting claims for breach of contract and breach of fiduciary duty against Cambridge. (*See* docket no. 19.) Because the factual allegations and causes of action asserted against LM Insurance Corporation and Liberty Mutual remain virtually unchanged, on April 24, 2010, LM Insurance Corporation and Liberty Mutual responded to Plaintiff's Amended Complaint by incorporating their original motion to dismiss into the instant motion.

2

assurance that the planned restructuring would not affect future payroll capping or Plaintiff's insurance premiums. (*Id.* ¶ 10.) Cambridge sought and received Liberty Mutual's assurance that the payroll of the Personnel would continue to be subject to maximum or capped levels if the Personnel were to become executive officers of Roush LLC. (*Id.* ¶¶ 10-11.)

In reliance on assurances from both Liberty Mutual and Cambridge, Plaintiff proceeded with the restructuring. (*Id.* ¶ 12.) On August 24, 2007, a Liberty Mutual representative confirmed in an email to Plaintiff that the Personnel payroll from Roush LLC continued to be subject to the maximum levels or capping. (*Id.* ¶ 13.) Liberty Mutual further confirmed this treatment in its final audit for 2007 and in its renewal quote and Policy for 2008, and the Personnel continued to be employees and executive officers of Roush LLC through December 31, 2008. (*Id.* ¶ 14.)

Plaintiff alleges that it would not have changed the entity employing the Personnel from Roush Corporation to Roush LLC if Liberty Mutual and Cambridge had not advised and assured Plaintiff that the payroll of the Personnel, as executive officers of Roush LLC, would continue to be subject to maximum or capped levels. (*Id.* ¶ 15.) Plaintiff alleges that, despite representations and assurances by Liberty Mutual and Cambridge that the Personnel payroll would be subject to maximum or capped levels, Liberty Mutual now seeks to collect additional premiums from Plaintiff by taking the position that the payroll of the Personnel, as executive officers of an LLC, as opposed to a corporation, is not subject to maximum levels for the purpose

3

of calculating premiums. (*Id.* ¶ 16.) More specifically, Liberty Mutual is seeking to collect more than $2 million in premiums that Liberty Mutual contends Plaintiff still owes under the policies for the periods December 1, 2007, to December 31, 2007, and December 31, 2007, to December 31, 2008. (*Id.* ¶ 8; *see also* Pl.'s Resp. Br. p. 5.) Finally, Plaintiff alleges that Liberty Mutual "blames Cambridge for failing to explain the matter adequately and/or to otherwise fulfill its professional obligations to [Plaintiff]." (Pl.'s First Am. Compl. ¶ 16.)

Based on the above allegations, Plaintiff requests that the court enter an order declaring that the payroll of the Personnel, as executive officers of Roush LLC, is subject to maximum or capped levels for purposes of calculating premiums under the Policies. Plaintiff argues that Liberty Mutual should be estopped by its prior representations and assurances from ceasing to subject Personnel payroll to maximum levels. Plaintiff has asserted the following legal claims against Liberty Mutual: (1) breach of contract; (2) unfair and deceptive trade practices under N.C. GEN. STAT. § 75-1.1; and (3) unfair insurance practices under N.C. GEN. STAT. § 58-63-15.

**II. Motion to Dismiss Standard**

Defendants have filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and, alternatively, for failure to state a claim under Rule 12(b)(6) of the Rules. First, with regard to a motion to dismiss pursuant to Rule 12(b)(1), the burden of proving subject matter

4

jurisdiction on a motion to dismiss is on the plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). In determining whether jurisdiction exists, the district court must regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. *Id.* A court should grant the Rule 12(b)(1) motion to dismiss if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. *Id.*

In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 813 (M.D.N.C. 1995). At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, is liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

The duty of fair notice under Rule 8(a), however, requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to

relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the Supreme Court has instructed, although detailed facts are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citation omitted). *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (clarifying *Twombly*). With these principles in mind, the court now turns to the motion to dismiss.

## III. Discussion

a. Regulation of Workers' Compensation Insurance in North Carolina, Administrative Exhaustion, and the "Filed Rate" Doctrine

Before addressing Defendants' arguments on the motion to dismiss, it is important to first provide a background on the workers' compensation insurance premiums at issue in this case. The North Carolina Workers' Compensation Act ("the Act") requires North Carolina employers to maintain workers' compensation insurance or qualify as self-insurers with the North Carolina Commissioner of Insurance. *See* N.C. GEN. STAT. § 97-93. Workers' compensation insurance is provided through a so-called "assigned risk plan" and is strictly governed by statutory regulation under North Carolina law.[2] *See generally* N.C. GEN. STAT. § 58-36-1 et seq.

---

[2] In this diversity case, the parties agree that North Carolina substantive law governs the court's construction of the implicated insurance policies and the rights and obligations flowing to the parties thereunder. *See* N.C. GEN. STAT. § 58-3-1; *accord Volvo Constr. Equip. N.A., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 599-600 (4th Cir. 2004).

6

The North Carolina Rate Bureau ("Rate Bureau"), to which all workers' compensation carriers operating in North Carolina must subscribe, adopts uniform rate plans, classifications, and loss factors by which premiums are calculated for employers seeking workers' compensation insurance under the assigned risk plan. *Id.*; *see also* N.C. GEN. STAT. §§ 58-36-1(5), 58-36-15, and 58-36-100(k), (o); *N.C. Farm Bureau Mut. Ins. Co. v. T-N-T Carports, Inc.*, 185 N.C. App. 686, 689, 649 S.E.2d 420, 422-23 (2007). The Rate Bureau is required to submit all proposed rates, including the factors, classifications, and loss data upon which they are based, to the North Carolina Commissioner of Insurance for review. *Id.* Unless challenged by the Commissioner, the rates and supporting data proposed by the Rate Bureau are deemed approved and binding for the calculation of workers' compensation premiums for employers participating in the assigned risk plan. *See* N.C. GEN. STAT. § 58-36-20.

<u>Administrative Exhaustion of Rate Challenges</u>

The rate-making procedures in Chapter 58 of the North Carolina General Statutes are complex and require significant experience and technical compliance to analyze the loss data and rating information upon which the rates are based. Thus, Section 58-36-1(2) contemplates that rate challenges must first proceed administratively through the Rate Bureau and/or Commissioner of Insurance. Section 58-36-1(2) specifically provides:

> The [North Carolina Rate] Bureau shall provide reasonable means to be approved by the Commissioner whereby any person affected by a

7

> rate or loss costs made by it may be heard in person or by the person's authorized representative before the governing committee or other proper executive of the Bureau.

N.C. GEN. STAT. § 58-36-1(2). The Rate Bureau has promulgated detailed administrative procedures for contesting workers' compensation insurance rates for the assigned risk pool, and the Rate Bureau's decision is only reviewable as allowed under North Carolina's Administrative Procedure Act, N.C. GEN. STAT., Chapter 150B. *See* N.C. GEN. STAT. § 150B-43 (agency decisions judicially reviewable only after exhaustion of all administrative remedies).

The Filed Rate Doctrine

In addition to the administrative exhaustion doctrine, the so-called "filed rate doctrine" also serves to bar judicial challenges to rates as set by the Rate Bureau. The filed rate doctrine, which originated from the United States Supreme Court's opinion in *Keogh v. Chicago & N.W. Ry.*, 260 U.S. 156 (1922), provides that once an insurance regulator has set a particular rate, a plaintiff may not then bring a lawsuit claiming damages on the basis that the rate approved by the regulator is excessive because it is the product of unlawful conduct. *See N.C. Steel, Inc. v. Nat'l Council on Comp. Ins.*, 347 N.C. 627, 632, 496 S.E.2d 369, 372 (1998) (dismissing judicial claims as barred by the filed rate doctrine). The filed rate doctrine, thus, prevents a plaintiff from burdening the trial court and/or jury with a rate analysis dispute under the guise of an unfair trade practice claim.

The North Carolina Supreme Court expressly adopted the filed rate doctrine in *N.C. Steel, Inc. v. National Council on Compensation Insurance*. *Id*. at 632, 496 S.E.2d at 372. In *N.C. Steel*, eight companies insured under the assigned risk plan for workers' compensation insurance filed a state court lawsuit asserting unfair trade/insurance practices claims under N.C. GEN. §§ 75-1.1 and 58-63-15 against the Rate Bureau and eleven insurance companies, among others, for allegedly hiding servicing fees paid to carriers participating in the Plan.[3] *Id*. at 630, 496 S.E.2d at 371. The plaintiffs alleged that the servicing fees unfairly inflated the premiums they paid under the assigned risk plan for workers' compensation insurance. *Id*. In reviewing the propriety of the plaintiffs' unfair trade practice claims, the North Carolina Supreme Court concluded that the plaintiffs' claims were in fact a collateral attack on the rates as approved by the Insurance Commissioner and were thus barred by the filed rate doctrine because "the plaintiffs could [not] prove damages without recalculating rates previously approved by the Insurance Commissioner." *Id*. at 637, 496 S.E.2d at 375. The court further explained:

> The plaintiffs contend that the servicing carrier fees were not considered by the Commissioner. They say that the failure of the defendants to disclose to the Commissioner the plan by which these fees are paid is a violation of N.C.G.S. § 58-63-15(5) and an unfair practice. We believe this is a good example of why questions involving

---

[3] The plaintiffs in *N.C. Steel* also sued the National Council on Compensation Insurance, the national entity that performs much of the Rate Bureau's rate-setting functions. Furthermore, the plaintiffs brought claims in addition to the unfair practices claims, but the additional claims were not at issue in the Supreme Court's ruling regarding the filed rate doctrine.

> rates should be settled by the Insurance Commissioner and not by a jury. Whether the payment of the servicing carrier fees is a relevant factor which must be considered by the Commissioner in setting rates pursuant to N.C.G.S. § 58-36-10 is a technical question which requires considerable expertise to answer. It is best decided by the Commissioner, who has this expertise. It should not be decided by a court or jury, which does not have this expertise.

*Id.* at 632, 496 S.E.2d at 372.

b. Defendants' Contention that Plaintiff's Claims Are Barred by Failure to Exhaust Administrative Remedies and by the Filed Rate Doctrine

In this lawsuit, Plaintiff seeks a declaratory ruling from the court that the salaries of certain of Plaintiff's Personnel are capped for the purposes of calculating Plaintiff's workers' compensation premiums under North Carolina law. In support of the motion to dismiss, Defendants first contend that Plaintiff "essentially seeks guidance from this Court on the appropriate insurance rates LM Insurance Corporation may charge it under the Assigned Risk Plan for workers compensation insurance coverage on the subject personnel." (Defs.' Br. p. 4.) Defendants contend that this claim is subject to exhaustion of administrative remedies and that Plaintiff has failed to allege exhaustion. *Cf. Burrill v. Long*, 185 N.C. App. 158, 647 S.E.2d 689 (2007) (unpublished).

Defendants further contend that Plaintiff's unfair trade/insurance practices claim is in fact merely a collateral attack on rating guidelines and job classifications filed by the Rate Bureau and adopted by the Commissioner. Defendants contend that, as such, Plaintiff's unfair trade/insurance practices claim is barred by the "filed

10

rate" doctrine. Defendants contend that Plaintiff's purported unfair trade/insurance practices claim is materially no different from that asserted by Plaintiffs in *N.C. Steel*. Defendants contend that, at its core, Plaintiff's claim does nothing more than assert a single instance of alleged misinterpretation by Defendants of a standardized and uniform job classification issue. Defendants contend that Plaintiff fails to allege any aggravated conduct, frequent business practice, or marked impact associated with Defendants' purported representations that would otherwise sustain an unfair insurance practice claim. Defendants contend that without such supporting allegations, Plaintiff's unfair insurance practice claim appears to be nothing more than a veiled attack on the rate-making process, and as such is barred by the filed rate doctrine.

I find that Plaintiff's claims are barred by neither the filed rate doctrine nor the exhaustion doctrine. Here, Plaintiff seeks to have this court hold that Defendants are estopped from charging the higher premiums because of Defendants' alleged misrepresentations. In its Prayer for Relief, Plaintiff asks this court to enter judgment "declaring that, *as represented and assured by Liberty Mutual*, the payroll of the Personnel, as executive officers of Roush LLC, is subject to maximum or capped levels for purposes of calculating premiums under the Policies." (*See* Compl., Prayer for Relief, ¶ 1 (emphasis added).) Plaintiff makes clear in its brief that it is not challenging the actual rates as set by the Rate Bureau. Moreover, the First Amended Complaint consists of specific allegations of Defendants' false assurances

11

and representations that the LLC conversion would not alter Defendants' premium calculations. Plaintiff alleges that it obtained Defendants' advice on this issue, was assured by Defendants that the LLC conversion would have no effect, and that Plaintiff detrimentally relied on Defendants' assurances in implementing the LLC conversion. Plaintiff contends that Defendants' assurances were false and deceitful, resulting directly in Defendants billing Plaintiff more than $2 million in excess of what Defendants would have billed had its assurances been truthful. Therefore, Plaintiff here is not challenging the Rate Bureau's rates themselves; rather, it is seeking damages based on allegations that it relied to its detriment on Defendants' assurances that changing Plaintiff's corporate structure from a corporation to an LLC would not affect the premium rates for Plaintiff's workers' compensation insurance. In other words, Plaintiff contends that Defendants should now be estopped from assessing the higher premium amounts since they previously assured Plaintiff that changing to an LLC would not raise the premiums.

Furthermore, to the extent that Plaintiff is challenging Defendants' assertion that, under the language of the Basic Manual for Workers' Compensation and Employers Liability Insurance, the payroll of some of Plaintiff's Personnel in the newly formed LLC is not subject to maximum levels, this contention addresses the interpretation of the Manual's language–and specifically how the Personnel are properly classified under the Manual--rather than being a challenge to rate-setting. *See N.C. Farm Bureau Mut. Ins. Co. v. T-N-T Carports, Inc.*, 185 N.C. App. at 687,

649 S.E.2d at 421 (appeal after non-jury trial over disputed job classification under the Manual).  Furthermore, I agree that the exhaustion doctrine is inapplicable here, as the remedy sought is not available under the administrative process.  For these reasons, it will be recommended that the court deny Defendants' motion to dismiss for lack of subject matter jurisdiction.

     I further find that the court should deny Defendants' alternative motion to dismiss for failure to state a claim for breach of contract and unfair insurance/trade practices.  First, Plaintiff sufficiently alleges a claim for breach of contract by alleging that Defendants have unjustifiably demanded that Plaintiff pay additional premiums under the Policies on the ground that the payroll of the Personnel, as executive officers of Roush LLC, is not subject to maximum or capped levels for purposes of calculating premiums under the Policies.  As to the unfair trade/insurance practices claim, Plaintiff alleges that it requested Defendants' advice and guidance in relation to whether Plaintiff's contemplated transition from a corporation to an LLC would result in any increase in Plaintiff's premiums.  Plaintiff also alleges that Defendants falsely represented and assured Plaintiff that the corporate restructuring would not result in a premium increase.  I find that these allegations are sufficient to state a claim against Defendants for unfair insurance practices under N.C. GEN. STAT. § 58-63-15 and, hence, an unfair trade practice under Chapter 75.  *See ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 472 F.3d 99, 123 (4th Cir. 2006).  Moreover, to the extent that Defendants suggest in their Reply brief that Plaintiff has

not sufficiently alleged damages, this argument is also without merit. Plaintiff contends that as a result of Defendants' wrongful conduct, Defendants are trying to recover more than $2 million in premiums from Plaintiff that would not have become due absent Defendants' misrepresentations to Plaintiff. Thus, Plaintiff has sufficiently alleged damages.

In sum, for the reasons stated herein, Defendants' motion to dismiss based on lack of subject matter jurisdiction and the alternative motion to dismiss based on failure to state a claim should both be denied.

### IV. Conclusion

For the reasons stated herein, it is **RECOMMENDED** that the court **DENY** Defendants' motion to dismiss (docket no. 24).

_____
WALLACE W. DIXON
United States Magistrate Judge

August 31, 2010